**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Tamara Sue DeBinder, et al. | ) | No.   CV 06-1804-PCT-PGR |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| Albertson's, Inc., et al. | ) | |
| Defendants. | ) | |

Currently pending before the Court is the Defendants Don Wagner, D.O., P.C. and Sandra Lubinski's Motion for Summary Judgment (Doc. 67). After considering the arguments of the parties through the papers submitted, the Court now rules on the motion.

**I.    BACKGROUND**

On December 8, 2005 Defendant Albertson's dba Sav-On Drugs ("Sav-On Drugs") received a telephone refill prescription. Upon arriving at work on December 9, 2005 at approximately 8:00 a.m., Sav-On Drugs' employee Rachel Brown was provided with a "post-it" note regarding a prescription for Plaintiff Tamara DeBinder. Brown found the prescription suspicious for the following reasons: (1) The prescription had been called in after a doctor's office's normal business hours; (2) all the required information was not entered in the system; and (3) Sav-On Drugs's records indicated that "Wagner" had never before prescribed Fiorinal with Codeine for Debinder.

In light of the suspicious nature of the prescription, Brown allegedly contacted Don Wagner, D.O., P.C. and spoke with someone from Wagner's office. Brown was informed that Wagner had no record of ever seeing Tammy DeBinder, that DeBinder was not Wagner's patient, and that Wagner had not authorized a refill prescription for DeBinder. However, Sav-On Drugs's records did indicate that DeBinder had been prescribed Fiorinal with Codeine by Anne Burns, M.D.

After calling Wagner's office, Brown contacted Burns' office with regard to the prescription. Brown was informed that Burns was on maternity leave and had not authorized a refill prescription for DeBinder. After speaking with Burns' office, Brown called Wagner's office a second time and spoke with Wagner's nurse-office manager, Defendant Sandra Lubinski ("Lubinski") about the prescription. Brown told Lubinski that Dr. Burns had not authorized the Debinder prescription and Lubinski reconfirmed that Wagner had no record of Debinder, that Debinder was not Wagner's patient, and that Wagner had not authorized a refill prescription for Debinder.

Lubinski also told Brown about prior problems Wagner's office had had with fraudulent prescriptions. Lubinski informed Brown that on multiple occasions prior to December 9, 2005, someone had telephoned fraudulent prescriptions into pharmacies under Wagner's name. Fearful that he would be subject to Arizona criminal liability or sanctions by the Drug Enforcement Agency, the Defendant maintains that Dr. Wagner initiated a strict protocol with regard to prescriptions, which included the rare use of telephone prescriptions, limiting the number of employees authorized to call in telephone prescriptions, and the use of a code word. Based on the recent incidences of fraud and the information provided to her, Lubinski advised Brown that "she [Debinder] had been calling in prescriptions all over town" and that Wagner "wanted her arrested."

On the afternoon of December 9, 2005, Bullhead City Police Department Corporal Eric Clevinger was dispatched to Sav-On Drugs with regard to a potential violation of A.R.S. § 13-3408(A)(6) (knowingly obtaining a narcotic by fraud, deceit, or misrepresentation).

1  Upon arriving at Sav-On Drugs, Clevinger met with Brown at which time Brown informed
2  Clevinger that on the evening of December 8, 2005, a telephone refill prescription for
3  Fiorinal with Codeine for T. DeBinder had been received along with the unusual
4  circumstances involved. Brown told Clevinger that Lubinski believed Debinder may be the
5  person who had been going around obtaining fraudulent prescriptions.

6  After speaking with Brown, Clevinger approached Debinder who was sitting in a
7  chair in the pharmacy waiting area. Clevinger identified himself and informed DeBinder that
8  he was investigating her prescription. During the course of their discussion, DeBinder
9  confirmed to Clevinger that she had not seen Wagner, that she was not Wagner's patient, and
10 knew that a person was required to see the prescribing doctor in order to obtain a
11 prescription. Debinder also told Clevinger that her doctor, Burns, was on maternity leave and
12 that perhaps Wagner had authorized the prescription on behalf of Bums.

13 Clevinger obtained Burns' phone number from Brown and then contacted Bullhead
14 City Police Department Dispatcher Karen Vaughan and requested that she contact Bums'
15 office with regard to the information provided by DeBinder. However, Vaughan apparently
16 called the wrong number. After Vaughan's inadvertent error, the Bullhead City Police
17 Department dispatch informed Clevinger that the number had been disconnected. Clevinger
18 then arrested DeBinder at approximately 4:30 p.m. for a violation of A.R.S. § 13-3408(A)(6),
19 and transported her to the Bullhead City jail. However, prior to making this arrest, it is
20 undisputed that Clevinger did not speak with Lubinski or anyone else from Wagner's office.

21 An investigation subsequent to DeBinder's arrest established that her detainment was
22 in error. DeBinder's prescription was authorized by John Weidner on behalf of DeBinder's
23 physician, the aforementioned Burns. Her arrest resulted in the present lawsuit through
24 which the Plaintiffs have asserted a defamation cause of action and loss of consortium claim
25 against Lubinski (Count Sixteen and Seventeen respectfully). The Plaintiffs have also
26 asserted that Wagner is vicariously liable for Lubinski's acts (Counts Eighteen and Nineteen)
27 and also name him liable for false arrest (Count Thirty-Six) and loss of consortium (Count
28

- 3 -

Thirty-Seven). Brown, Bullhead City, Vaughan, Clevinger and Sav-On Drugs are all Co-Defendants in this action but have not joined in this motion.

## II.     LEGAL STANDARD AND ANALYSIS

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when, after viewing the evidence in the light most favorable to the non-moving party, no genuine issues of material fact remain for trial. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of demonstrating that it is entitled to summary judgment. *Mur-ray Mgmt. Corp. v. Founders Title Co.*, 819 P.2d 1003, 1005 (Ariz. Ct. App. 1991). If the moving party makes a *prima facie* case showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that a triable issue of fact does remain. *Ancell v. United Station Assocs., Inc.*, 803 P.2d 450, 452 (Ariz. Ct. App. 1990). The Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324. However, the non-moving party may not merely rest on its pleadings, it must produce some significant probative evidence tending to contradict the moving party's allegations and thereby creating a material question of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57(1986)(holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

Defendants Wagner and Lubinski request that this Court enter summary judgment in their favor and against the Plaintiffs for the following reasons: (1) All the statements made by Defendants Wagner-Lubinski were true, or subject to an absolute or qualified privilege; (2) Defendants did not abuse any qualified privilege; (3) Defendants did not arrest or cause Plaintiff Tamara DeBinder to be arrested; and (4) Co-Defendant Clevinger arrested the Plaintiff based on his independent professional judgment.

- 4 -

### A. Defamation

"Defamation is the publication to a third party, of a false, defamatory statement of and concerning the plaintiff that is not privileged." *Spratt v. Northern Automotive Corp.*, 958 F. Supp. 456, 465 (D. Ariz. 1996) *citing Yetman v. English*, 811 P.2d 323 (1991). "Arizona views the Restatement as authority for resolving questions concerning rules in defamation cases." *Burns v. Davis*, 993 P.2d 1119, 1126 (Ariz. Ct. App. 1999), *see also Green Acres Trust v. London*, 688 P.2d 617 (Ariz. 1984) (*citing* Restatement (Second) Torts § 595), *Selby v. Savard*, 655 P.2d 342 (Ariz. 1982) (*citing* Restatement (Second) Torts § 598) and *Miller v. Servicemaster by Rees*, 851 P.2d 143 (Ariz. Ct. App. 1993)(*citing* Restatement (Second)Torts § 594).

The parties agree that Wagner-Lubinski made three statements about DeBinder: (1) Wagner had no records indicating DeBinder was a patient; (2) Wagner had not authorized a prescription for DeBinder; and (3) that DeBinder was calling in prescriptions all over town using Dr. Wagner's name. It is undisputed that the first two statements are not defamatory as truth and substantial truth are an absolute defense to a defamation claim. *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. 1991). However, the third statement, that "she was calling in prescriptions all over town using Dr. Wagner's name" referred to DeBinder and, as conceded by the Defendants for purposes of this motion only, was defamatory. Thus the Court turns to the next issue before it: Whether the Defendants' statement is privileged.

### 1. Absolute Privilege

"As a defense to an action for defamation, the law recognizes that 'conduct which would otherwise be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.'" *Green Acres Trust v. London*, 688 P.2d 617, 620 (Ariz. 1984) (*citing* Prosser, *Law of Torths* (4th Ed. 1971) Section 114, p. 776.) This protection from liability is described as privilege. *Green Acres Trust*, 688 P.2d at 620. As the Arizona Supreme Court goes on to explain, there are two classes of privileges,

"absolute" and "qualified." *Id.* The absolute privileges created by law are based upon recognition that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interest. *Id.* When statements are absolutely privileged, the speaker is immune from civil liability and courts do not inquire into the declarant's motives or whether the statements were made in good faith. *Sobol v. Alarcon*, 131 P.3d 487, 490 (Ariz. Ct. App. 2006).

The Defendants rely on *Ledvina v. Cerasani* to support their position that the defamatory statement made is subject to an absolute privilege because it relates to the report of a crime. 146 P.3d 70 (Ariz. Ct. App. 2007). In *Ledvina,* the defendant reported to law enforcement that the plaintiff had slashed the tires of his car and the plaintiff subsequently sued the defendant for defamation. *Id.* at 71. The Arizona Court of Appeals concluded that a person who reports an alleged crime to the police is not subject to a defamation suit as such statements are absolutely privileged. *Id.* at 76. Accordingly, the Court would not inquire into whether the statements were made in good faith. *Id.* at 72. The *Ledvina* Court "adopted the rule that treats both formal and informal complaints and statements to a prosecuting authority as part of the initial steps of a judicial proceeding, and as such entitled to absolute immunity to an action for defamation." *Id.* at 74. The Court also stated, with no elaboration, that the same absolute immunity or privilege applies to statements made to the city or county attorney or those investigating a suspected crime. *Id.*

The Plaintiffs argue that the *Ledvina* decision is inapplicable to the case before the Court. The Plaintiffs note that the *Ledvina* opinion consistently refers to "encouraging the free and unhindered communications to law enforcement authorities" and simply does not apply in cases where one private individual makes a defamatory statement to another private individual. The Plaintiffs emphasize that Wagner-Lubinski's defamatory statement was not made to a police officer, but rather to a private citizen not acting in a law enforcement capacity; therefore, the Defendants are not entitled to absolute immunity.

- 6 -

The Defendant counters that the *Ledvina* Court noted that absolute immunity applies to those statements made to one investigating a suspected crime and therefore applies in this case. Defendants point out that the defamatory statement was made to Brown, a pharmacy technician, when she contacted Wagner-Lubinski to investigate the possibility of a forged prescription by Plaintiff DeBinder. The Defendants argue that professional and licensed private citizens, such as a pharmacy technician and a registered nurse employed by a doctor's office, should be free to communicate with one another regarding potential criminal activity without fear of civil liability. According to the Defendant, any limitation on legitimate inquiries by private citizens regarding suspected criminal activity is contrary to the policy of the State of Arizona and the United States of America as such a limitation would chill the average citizen's involvement in crime detection and reporting.

Although the Court finds merit with both the Plaintiffs' and Defendants' arguments, the Court will not rule that an absolute privilege exists in this case as the communications took place between two private individuals. The *Ledvina* Court offered no discussion regarding whether an absolute privilege exists for one reporting a suspected crime to another private individual which then resulted in an arrest. As such, the Court will consider whether a qualified or conditional privilege is applicable to the facts before it.

### 2. Qualified or Conditional Privilege

The qualified or conditional privilege is another defense to a defamation action, and it is also raised by the Defendant. *Green Acres Trust*, 688 P.2d at 624. This privilege is based on the social utility of protecting statements required to be made in response to a legal, moral or social duty. *Aspell v. American Contract Bridge League*, 595 P.2d 191 (Ariz. Ct. App. 1979); Prosser, Section 115, at p. 786. It differs from the defense of absolute privilege in that "the interest which the defendant is seeking to vindicate is regarded as having an intermediate degree of importance, so that the immunity conferred is not absolute, but is conditioned upon publication in a reasonable manner and for a proper purpose." *Green Acres*

*Trust*, 688 P.2d at 624. Absent a proper purpose or reasonable manner of publication, the defense fails.

In general, Arizona law establishes a two-part analysis for determining whether a qualified privilege exists. *Id.* The Court must first determine whether a privileged occasion arose, and, if so, whether the occasion for the privilege was abused. *Id.*; Roscoe v. Schoolitz, 464 P.2d 333 (Ariz. 1970). Whether a privileged occasion arose is a question of law for the Court, and whether the occasion for the privilege was abused is a question of fact for the jury. *Green Acres Trust*, 688 P.2d at 624. To establish that a privileged occasion arose, a defamation defendant must establish that the circumstances in which the communication was made created an obligation to speak. *Id.* Once a defendant demonstrates that a conditional privilege may apply, the plaintiff may then prove abuse of that privilege either by proving publication with "actual malice" or by demonstrating excessive publication. *Selby v. Savard*, 655 P.2d 342 (Ariz. 1982). An abuse through actual malice occurs when the defendant makes a statement knowing its falsity or actually entertaining doubts about its truth. *Green Acres Trust*, 688 P.2d at 624. Abuse from excessive publication results from publication to an unprivileged recipient not reasonable necessary to protect the interest upon which the privilege is grounded. *Id.*

In *Green Acres Trust*, the Arizona Supreme Court addressed three qualified privileges set forth in the Restatement (Second) of Torts. The Defendant argues that two of these qualified privileges are applicable to this action: Section 594, entitled "protection of the Publisher's Interest," and Section 595, entitled "Protection of Interest of Recipient or a Third Person." Furthermore, the Defendant notes that two other qualified privileges identified in the Restatement are also applicable to this action: Section 596 entitled "Common Interest" and Section 598 entitled "Communication to One who May Act in the Public Interest."

In general, the Plaintiffs argue that a qualified privilege does not apply in this case. The Plaintiffs maintain that a qualified privilege may exist as to the statements made that (1) Ms. DeBinder was not a patient of Dr. Wagner, and (2) that he had not written the

prescription as these were a necessary part of the communication between a pharmacy and a doctor. However, the Plaintiffs contend that Wagner-Lubinski provided unnecessary and false information which was not privileged as their statements were not limited solely to the prescription in question at the time. Rather, the Plaintiffs argue that the Defendants asserted that DeBinder had committed numerous crimes in numerous places when they told Brown at Sav-On that DeBinder had been going all over Bullhead City and Needles, California with false prescriptions. According to the Plaintiffs, this information was not relevant to the situation at hand as Sav-On had contacted the doctor's office to investigate whether DeBinder was a patient and if he had written the prescription in question. The Plaintiffs assert that once those questions were answered in the negative, this exhausted all the useful information at Wagner-Lubinski's disposal. Furthermore, the Plaintiffs argue that the fact that part of the conversation might have been privileged did not create a situation whereby Wagner-Lubinski could submit anything with no regard for its accuracy.

The Court is unpersuaded by the Plaintiffs' argument opposing the existence of a qualified privilege. For the reasons advanced below, the Restatement (Second) of Torts provides occasions where a publisher's statements are shielded from liability. The Court will address separately address each.

The Court will separately address each below.

        a.    Restatement § 598 - "Communication to One Who May Act in Public Interest"

Restatement Section 598 states as follows:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that:
>
> (a) there is information that affects a sufficiently important public interest, and
>
> (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true.

Furthermore, Comment f to Section 598 adds:

> Communications to private citizen to prevent crime or apprehend criminal. The privilege stated in this Section affords protection to a private citizen who publishes defamatory matter to a third person even though he is not a law enforcement officer, under circumstances which, if true, would give to the recipient a privilege to act for the purpose of preventing a crime or of apprehending a criminal or fugitive from justice.

The Defendant argues that this particular qualified privilege exists as the public interest being protected was the prevention of a crime, i.e., fraudulently obtaining prescription drugs. As noted by the Defendant, Comment f to § 598 specifically addresses the situation at bar. The Defendant asserts that Wagner-Lubinski's statement was made to a private citizen, pharmacy technician Brown. If the statement had been true, then Brown would have the privilege to inform law enforcement for the purpose of preventing a crime. The Court agrees with the Defendant that a qualified privilege exists pursuant to § 598 as the information given was provided in an effort to prevent the commission of a crime.

                           b.        Restatement § 596 – "Common Interest"

Restatement § 596 provides:

> An occasion makes a publication conditionally privileged if the circumstances lead one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

The Defendant argues to the Court that Sav-On and Wagner-Lubinski had a common interest in the issue of DeBinder's prescription, and Wagner-Lubinski had a reasonable belief that Sav-On was entitled to know the information concerning Wagner's prior problem with fraudulent prescriptions. As such, the Defendants argue that the statement made is conditionally privileged under this section as well. The Court agrees. Lubinski, as a registered nurse and employee of Wagner, and Brown, as a pharmacy technician and employee of Sav-On, shared a common interest in preventing crimes involving fraudulent prescription drugs along with the protection of their respective employers' legitimate business and professional interests.

- 10 -

    c. Restatement § 594 – "Protection of Publisher's Interest"

This section of the Restatement reads as follows:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
>
> (a) there is information that affects a sufficiently important interest of the publisher, and
> (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

The Defendant proffers that the lawful pecuniary interest Wagner-Lubinski sought to protect was Wagner's ability to earn a living, i.e., to practice medicine and prescribe drugs. According to the Defendant's position, the information provided to Wagner-Lubinski by Brown induced a reasonable belief that Wagner's interest was involved, and Brown's receipt of the knowledge would be of service in protecting that interest. Again, the Court agrees with the Defendant that a conditional privilege exists under § 594 to shield the Defendants from liability for defamation. The apprehension of criminals using Wagner as the authorizing physician on a fraudulent prescription clearly protects Wagner's interest.

    d. Restatement § 595 – "Protection of Interest of Recipient or a Third Person"

Restatement § 595 provides:

> (1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that:
>
>  (a) there is information that affects a sufficiently important interest of the recipient or a third person, and
>
>  (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.
>
> (2) In determining whether a publication is generally accepted standards of decent conduct it is an important factor that:
>
>  (a) the publication is made in response to a request rather than volunteered by a publisher or

- 11 -

> (b) a family or other relationship exists between the parties.

Furthermore, Commend d to § 595, Subsection (1) adds:

> The class of interests of third persons that are legally protected by a privilege to publish defamatory matter concerning another for their protection is in general similar to that which will support a conditional privilege when the defamatory publication is made for the protection of the publisher's interest. (See § 594, Comment d). Thus, a statement made for the protection of a lawful business, professional, property or other pecuniary interest and in some instances, a domestic interest, comes within the rule stated in this Section. (Cf. § 594, Comment f). As in the case of a publication made for the protection of the publisher's interest (cf. § 594, Comment h), it is unnecessary that the interest in question be actually in need of protection. It is enough that the circumstances are such as to lead to the reasonable belief that the third person's interest is in danger. If the publisher does not believe in the necessity of the publication for the protection of the interest, the privilege is abused. (See § 603).

The Defendant maintains that the Wagner-Lubinski statements were made, in part, for the protection of Sav-On's lawful business interest, i.e., to avoid fraudulent prescriptions. The Defendant reasons that for a doctor to communicate with a pharmacy in order to prevent fraudulent prescriptions is within generally accepted standards of decent conduct. The Defendant argues that the statements were made in response to request for information from Sav-On through pharmacy technician Brown. The Court is persuaded that a conditional or qualified privilege also exists under § 595. As noted by the Defendants, the lawful business and professional interests of pharmacies and physicians are protected when they communicate with one another regarding fraudulent prescriptions.

Once the Court has determined that a privileged occasion arose, the next inquiry is whether the Defendants abused that privilege and thus may be liable for defamation. The Plaintiffs may assert an abuse of that privilege by proving publication with actual malice or by demonstrating excessive publication. As previously noted, an abuse through actual malice occurs when the defendant makes a statement knowing its falsity or with reckless regard as to whether it is false. *Green Acres Trust*, 688 P.3d at 624; *Burns v. Davis*, 993 P.2d 1119,

- 12 -

1126 (Ariz. Ct. App. 1999). An abuse through excessive publication results from publication to an unprivileged recipient not reasonably necessary to protect the interest upon which the privilege is grounded. *Id.* As *Green Acres Trust* instructs, whether the occasion for the privilege was abused is a question of fact for the jury. *Id.*

The Plaintiffs maintain that the Defendants abused any privilege that may have existed as Lubinski's statements that Ms. DeBinder had been going all over the place with forged prescriptions was without any foundation. Although Dr. Wagner had been having a problem with various persons forging prescriptions, the Plaintiffs maintain that there is no evidence to suggest that there was one woman who was the sole perpetrator. Nonetheless, the Plaintiffs argue that Lubinski was quite specific in convincing Brown at Sav-on that Ms. DeBinder was on a crime spree. The Plaintiffs contend that Lubinski knew or should have known that her statements would have an effect on whether Ms. DeBinder received the needed medicine and on whether she might be arrested. At the very least, the Plaintiffs maintain that there are enough questions of fact to require that a jury decide whether Lubinski-Wagner was acting in good faith when she falsely accused Ms. DeBinder of forging prescriptions.

In opposition, the Defendants submit that the Plaintiffs have not raised a genuine issue of material fact, and that no rational trier of fact could conclude that Lubinski knew her statement was false or actually entertained doubts as to its falsity simply on the basis that there was no evidence that one woman was the sole perpetrator of the fraudulent prescriptions. The Court disagrees with the Defendant. According to *Burn v. Davis*, "[u]nless only once conclusion can be drawn from the facts, the determination of the question of whether the privilege was abused is for the jury." 993 P.2d at 1128. There is no evidence in the record before does not lend itself to only one conclusion on the issue of abuse of the qualified privilege. A jury could conclude that Defendants Wagner-Lubinski named Ms. DeBinder as the individual responsible for forging prescription with reckless regard for its truth. As noted by the Plaintiffs, there is no evidence that there was only one woman

- 13 -

responsible for the forgeries. The Court concludes that the issue of whether the qualified privilege was abused must be determined by a jury.

### B. False Arrest

The tort of false imprisonment, a lineal descendant of the old action of trespass, is sometimes called false arrest. *Deadman v. Valley Nat. Bank of Ariz.*, 743 P.2d 961, 965-66 (Ariz. Ct. App. 1987); *see also* Prosser & Keaton on Torts § 11 at 47, (5th ed. 1984). "The essence of false imprisonment is the direct restraint of personal liberty or freedom of locomotion, either by actual force or the fear of force." *Deadman*, 743 P.2d at 66; *Wisniski v. Ong*, 329 P.2d 1097 (Ariz. 1958). Furthermore, one who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment. *Deadman*, 743 P.2d at 966.

The Restatement (Second) of Torts 45A, Comment C states in part:

> Instigation. If the confinement is unprivileged, the one who instigates it is subject to liability to the person confined for the false imprisonment. Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of "officer, arrest that man!" It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.

Commend d states:

> One who instigates a false imprisonment becomes liable as if he had himself done the act causing the confinement. He is not protected by his reasonable belief that the officer or other person who makes the arrest has legal authority to make it, or that the arrest is fully justified.... Probable cause, which will prevent liability for malicious prosecution, ... is not a defense to an action for false imprisonment.

Comment e states in part:

> Participation. One who takes part in a false imprisonment, by aiding another to make it, becomes liable as if he had acted by himself.

- 14 -

*See Sarwark Motor Sales, Inc. v. Woolridge*, 354 P.2d 34 (Ariz. 1960); Prosser & Keaton, § 11 at 52.

The Defendants maintain that they cannot be liable for false arrest under the undisputed facts as it is clear that they did not instigate the arrest at issue. The Defendants state they the arresting officer never spoke with Wagner or Lubinski prior to making the decision to arrest DeBinder, that his decision to arrest DeBinder was based on his independent professional judgment, and that Lubinski's statements had no impact on his decision to arrest DeBinder.

Both Plaintiffs and Defendants rely on *Deadman v. Valley National Bank of Arizona,* to support their respective positions. 743 P.2d at 961. In *Deadman*, the plaintiff went to defendant Valley National Bank to get a cashier's check for $2,000 in order to purchase a truck. Id. at 963-64. The defendant erroneously concluded that the plaintiff was attempting to commit fraud and was a member of the gang currently operating in the Phoenix area using stolen or forged credit cards to get cash advances. *Id.* The police were called and the plaintiff was taken into custody. *Id.* The plaintiff later sued the bank and asserted a claim for false arrest. *Id.* at 965. The trial court denied the Bank's motion for a directed verdict on the false arrest claim, and instead, on its own motion, directed a verdict in favor of the plaintiff on the issue of liability. *Id.* The trial court stated:

> I am also compelled to find as a matter of law that the bank acting through its employees was without probable cause to believe that the plaintiff was engaged in the felony. And since it cannot be found that the arrest that followed was anything but the natural and understandable result of that erroneous belief, and the plaintiff is entitled to a verdict in his favor against the bank for a fair, just compensation.

*Id.* The issue of damages was submitted to the jury and the plaintiff was awarded $25,000 in compensation. *Id.*

The Defendant appealed the trial court's decision arguing that the court should have directed a verdict in favor of the bank. The Arizona Court of Appeals concluded that the trial court's denial of the bank's motion for a directed verdict was proper because the record contained evidence upon which a jury might reasonably find that the bank's employees (1)

- 15 -

engaged in conduct that directly resulted in the plaintiff's arrest, and, that in doing so, they did not act "reasonable" under the circumstances, or (2) that they in fact participated in the arrest. *Id.* at 971. However, the court reversed the directed verdict in favor of the plaintiff and held that the claim for false arrest was a question of fact for the jury to determine. *Id.* According to the Court, a jury might have found that, the bank instigated or participated in the plaintiff's arrest, but that does not mean that no reasonable juror could have found otherwise. *Id.*

The Deadman opinion specifically notes that "although strong public policy favors encouraging private citizens to report suspected criminal activity, the falsely and unreasonably accused individual ought not to be without a legal remedy." *Id.* at 970. The court also notes that "that it is thoroughly settled law that a person is liable for a false arrest made by another if he 'directed, advised, countenanced, encouraged or instigated' such arrest. *Id.* at 967.

In this case, Defendant Wagner stated to his employee, Defendant Lubinski, that he "wanted [DeBinder] arrested." The request was then passed on to Sav-On Drug's employee who initiated the process. As noted by the Plaintiffs, such was not a vague request to further investigate the possibility of a fraudulent prescription. The statements made by the Defendants could be construed as instigating an arrest as the words and acts did direct, request, invite and/or encourage the arrest of the Plaintiff DeBinder.

According to *Deadman*, "[a] defendant may be held liable as instigator of an arrest, even though there is no evidence that he expressly requested or demanded it, as long as the facts surrounding the arrest reasonably create a permissible inference of instigation." *Id.*; *Crescent Amusement Co. v. Scott*, 40 So. 2d 882 (Ala. Ct,.App. 1949). In this case, the fact that Defendant Wagner said he wanted DeBinder arrested is undisputed. As previously noted in this opinion, the *Deadman* Court makes clear that a person is liable for a false arrest made by another if he instigated such arrest. 743 P.2d at 967. As such, a genuine of issue of material fact precludes the Court from entering judgment in Defendants Wagner and

- 16 -

Lubinski's favor on the claim for False Arrest. As the Deadman court discussed, rather than conclude that the Defendants merely gave conclusory or erroneous information , a jury might reasonably find that the Defendants persuaded or encouraged the police to arrest DeBinder

III.   CONCLUSION

Based on the above analysis, the Court concludes that summary judgment in favor of the Defendants and against the Plaintiffs will be entered as to Counts 16,17,18,and 19 on the Plaintiffs' Complaint. However, summary judgment is denied as to Plaintiffs' claim for false arrest as a genuine issue of material fact remains and must be resolved by a jury.

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. 67) is GRANTED in part, and DENIED in part.

DATED this 25th day of March, 2008.

Paul G. Rosenblatt
United States District Judge

- 17 -