**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Tamara Sue DeBinder, et al. | ) | No.   CV 06-1804-PCT-PGR |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| Albertson's, Inc.,dba Sav-On Drugs, et al. | ) | |
| Defendants. | ) | |

Currently pending before the Court are the Motion for Summary Judgment (Doc. 101) filed by Defendants Rachel Brown (hereinafter Ms. Brown) and Albertson's Inc., dba Sav-On Drugs (hereinafter Sav-On) and the Motion for a More Definite Statement[1] (Doc. 115) filed by Tamara and Bryan DeBinder. After considering the arguments of the parties through the papers submitted, the Court now rules on the motions.

As a preliminary matter, the Plaintiff concedes that summary judgment should be granted with respect to her claims against Ms. Brown for malicious prosecution and defamation. Therefore summary judgment is **GRANTED** in favor of Ms. Brown and against Ms. DeBinder as to Ms. DeBinder's claims for malicious prosecution and defamation.

---

[1] This Motion was wrongly designated as a Motion for a More Definite Statement and will hereinafter be considered a Motion for Clarification of a Court Order.

## MOTION FOR SUMMARY JUDGMENT

**I.    BACKGROUND[2]**

### A.    The Night In Question

Ms. Brown is a pharmacy technician at a Sav-On Pharmacy located in an Albertson's Supermarket in Bullhead City, Arizona. When Ms. Brown reported to work on December 9, 2005, she discovered a note on her computer written by one of the technicians who worked the prior evening. The note pertained to a prescription for Fiorinal with codeine, a narcotic pain medication. The prescription had been called in for Plaintiff Tamara Sue DeBinder (hereinafter Ms. DeBinder) while Ms. Brown was not at the pharmacy[3] and indicated that the other technicians were not able to process the prescription because it did not match up with the information in Sav-On's computer system. The note included the prescription number and advised that the pharmacy needed to follow-up on the prescription because the prescription number failed to match the doctor's name who allegedly called in the prescription.

The prescription had been called in by Dr. *Weidner's* Office at the request of Plaintiff's treating physician; however, the pharmacy technician misheard the doctor's name and inadvertently wrote the name "Dr. *Wagner*" on the note left for Ms. Brown. According to Ms. Brown's deposition testimony, the note stated that the prescription was called in by a woman named "Linda" from the office of Dr. Wagner. The computer showed that the original prescription number was attributed to a doctor by the name of Dr. Chang-Burns. This was a cause for concern for the pharmacy because the computer system permits each prescription number to be associated with only one doctor. Prior to Ms. Brown taking any

---

[2] The Background facts are undisputed unless otherwise noted.

[3] In this opinion, references to the "Plaintiff" are to Tamara Sue DeBinder. The Plaintiff's husband Bryan DeBinder's claims in this matter are entirely derivative and to avoid confusion, he will be referred to as Mr. DeBinder only.

- 2 -

action pertaining to the note and the prescription, Ms. DeBinder called to inquire whether her prescription from the previous night was ready to be picked up. Ms. Brown told her that she "didn't have a prescription there for her to pick up."

Subsequent to Plaintiff's phone call and prior to Ms. Brown calling any healthcare providers, Ms. Brown spoke with Nancy Jasso, a Sav-On clerk, and Lisa Choo, the pharmacy technician who had received the call the previous night, to confirm the information on the note. Thereafter, in an attempt to clarify any confusion, Ms. Brown contacted the office of Dr. Wagner. Ms. Brown testified that when she first contacted Dr. Wagner's office, she asked the attendant if Dr. Wagner had a patient named Tamara DeBinder. Dr. Wagner's office attendant informed Ms. Brown that he did not have a patient by that name and that Dr. Wagner did not prescribe Fiorinal for the Plaintiff.[4] Ms. Brown was further advised that Dr. Wagner did not have an employee by the name of Linda.

Thereafter, Ms. Brown contacted Dr. Burns, the doctor listed in Sav-On's computer system that was associated with the prescription number. However, when Ms. Brown reached Dr. Burns' office at Cerbat Medical Center, she was informed that Dr. Burns was on maternity leave and that she did not refill the prescription. Ms. Brown was not advised by anyone at Cerbat Medical Center that another doctor was covering for Dr. Burns and may have called in the prescription on her behalf. Furthermore, at no time did Plaintiff mention the name of any other doctor, Cerbat Medical Center, or the possibility that someone else may have had anything to do with the refill.

---

[4] Ms. Brown was, however, advised that Ms. DeBinder's husband was a patient of Dr. Wagner.

- 3 -

According to the record, as part of her job, when a prescription raises "red flags[5]," Ms. Brown is obligated to work through them to ensure she is protecting both the patient and herself, including calling the prescribing doctor's office. People have previously attempted to obtain narcotic drugs through the use of fraudulent prescriptions and this is one of Sav-On's current concerns.

Ms. Brown stated that due to the conflicting information, she called Dr. Wagner's office a second time to once again attempt to verify the prescription. This time she spoke with Sandra Lubinski, the office manager. Ms. Brown did not indicate to Ms. Lubinski that she suspected the prescription was fraudulent. She only told her that "nobody at Dr. Burns' office would have okayed a refill for [the Plaintiff] because Dr. Burns is out on maternity leave." Ms. Lubinski responded by notifying Ms. Brown that the Plaintiff "had been calling prescriptions in all over town, including Needles, California" under Dr. Wagner's name, and stated that Dr. Wagner insisted that Ms. Brown call law enforcement.

Following the request by Dr. Wagner that the authorities be contacted, Ms. Brown spoke with her own manager, Mr. Olson, and explained what had happened thus far with the prescription, what she had been told by the offices of Dr. Burns and Dr. Wagner, and that she was still unable to verify the prescription. Consequently, Mr. Olson authorized her to call the Bullhead City Police Department. She did as she was instructed and told the police that given the totality of the circumstances, the Plaintiff was suspected of calling in a fraudulent prescription in violation of A.R.S. § 13-3408(A)(6). She was then told by the police to call back when the patient returned to the pharmacy to pick up her prescription.

---

[5] Ms. Brown testified that there were a number of red flags pertaining to Plaintiff's prescription: (1) it was a phone-in refill that was done after normal physician business hours; (2) the caller referenced a prescription number, rather than a specific medication (this is a red flag because the doctor's office generally does not know the prescription number the pharmacy assigned to the medication); (3) the prescription was authorized by a physician other than the physician who wrote the original prescription.

Ms. Brown then called Ms. DeBinder to notify her that she had found the prescription and inquired as to when she would be coming in to pick it up. When Plaintiff arrived, just as instructed by the Bullhead City Police Department, an employee of Sav-On called the police.

Officer Clevinger was dispatched to the scene. He testified that upon his arrival he initially made contact with Ms. Brown and was told the following:

> That they received a phone-in prescription on their prescription line the previous night; that whoever had called in this prescription did not follow the proper procedure, and did not provide the necessary information, so the prescription was not entered into the computer system. The next morning, Ms. Brown received this information, called Dr. Wagner's office, which is where the prescription supposedly originated from, to verify the prescription. She said that she spoke with an employee named Sandy, who told her that Dr. Wagner never wrote the prescription; that Ms. DeBinder was never seen by Dr. Wagner, although her husband had. Sandy, from Dr. Wagner's office, went on to say that they've been having a problem with some woman going around to all the pharmacies in the area – requesting fraudulent prescriptions using Dr. Wagner's name, and that Sandy believed that this woman might be the one involved; therefore, she requested that the police be contacted.

After speaking with Ms. Brown, Officer Clevinger approached Ms. DeBinder who was sitting in the pharmacy. He identified himself to her as an officer investigating the prescription, relaying the foregoing information he had received from Ms. Brown. He then inquired as to whether Ms. DeBinder was at the pharmacy to pick up a prescription under Dr. Wagner's name, to which she answered in the affirmative. During their conversation, Ms. DeBinder confirmed to Officer Clevinger that she had not seen Dr. Wagner, that she was not Dr. Wagner's patient, and that she knew that a person was required to see the prescribing doctor in order to obtain a prescription. Ms. Debinder also told Officer Clevinger that she was aware Dr. Burns was on maternity leave and that perhaps Dr. Wagner had authorized the prescription on behalf of Dr. Burns. According to the record, it was at this point in time that Officer Clevinger became suspicious of Ms. DeBinder. Officer Clevinger informed Ms. DeBinder that the pharmacy had checked with Dr. Wagner and had been advised that he had not ordered the prescription for her. Officer Clevinger and Ms. DeBinder both used Dr.

- 5 -

Wagner's name multiple times, however at no time did Plaintiff indicate that the prescribing doctor was actually Dr. *Weidner*, nor did she mention that her doctor was part of a group of doctors at Cerbat Medical Center.  Ms. Brown was not a part of the conversation between Officer Clevinger and Ms. DeBinder.

Officer Clevinger then obtained Dr. Burns' phone number from Ms. Brown and contacted Bullhead City Police Department dispatcher Karen Vaughan.  He requested that she contact Dr. Burns' office with regard to the information provided by Ms. DeBinder.  The dispatcher inadvertently dialed the wrong number and heard that the number had been disconnected. Upon receiving the information from the dispatcher, Officer Clevinger, in the exercise of his "independent professional judgment," determined that probable cause[6] existed to arrest Ms. DeBinder for a violation of A.R.S. § 13-2408(A)(6) (obtaining a narcotic drug by fraud), a class 3 felony, and placed her under arrest.[7]

Thereafter, Ms. DeBinder was "booked" into jail where she spent 24 hours and was then released. Only after the arrest did the facts come out that the prescription had been called in by Dr. John Weidner's office, another doctor working at Cerbat Medical Center. Consequently, Bullhead City Prosecutor dismissed the charges against Ms. DeBinder. Subsequently, the present lawsuit ensued.

### B. Plaintiff's Ailments and Allegations

Ms. DeBinder was on medical leave prior to the incident at bar, previously having been diagnosed with stomach problems, migraines, back problems, depression, Crohn's

---

[6] Probable cause amounts to a reasonable belief that a specific individual has committed a crime.  When Officer Clevinger initially spoke to Ms. Brown, he did not believe he had probable cause to arrest Plaintiff, merely reasonable suspicion. According to Officer Clevinger, the events and conduct subsequent to speaking with Ms. DeBinder raised the level of suspicion to reasonable belief.

[7] Officer Clevinger was aware of the problem in the area associated with fraudulent attempts to obtain prescription pain medication (narcotics) by fraud or deceit.  This too was corroborated by Dr. Wagner and the Bullhead City dispatcher.

disease, diarrhea, and anxiety attacks. As a result of the arrest, she alleges to have developed a fear of driving having become afraid of being pulled over by the police and arrested. She also claims to have acquired a fear of pharmacies as a result of the incident. Ms. DeBinder's husband notes that since his wife's arrest, she has been crying and worrying; for example, she worries about picking up her prescriptions and going to the market.

## II.   LEGAL STANDARD AND ANALYSIS

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Summary judgment is properly granted when, after viewing the evidence in the light most favorable to the non-moving party, no genuine issues of material fact remain for trial. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of demonstrating that it is entitled to summary judgment. Mur-ray Mgmt. Corp. v. Founders Title Co., 819 P.2d 1003, 1005 (Ariz. Ct. App. 1991). If the moving party makes a prima facie case showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that a triable issue of fact does remain. Ancell v. United Station Assocs., Inc., 803 P.2d 450, 452 (Ariz. Ct. App. 1990). The Court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the non-moving party may not merely rest on its pleadings, it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57(1986)(holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968).

Defendant Ms. Brown requests that this Court enter summary judgment in her favor and against the Ms. DeBinder based on Defendant's assertion that Plaintiff cannot establish

the necessary elements to prove her claims of negligence, negligent infliction of emotional distress, false arrest, malicious prosecution, defamation, and punitive damages.[8] Likewise, Defendants argue that Plaintiffs' derivative claims of negligent supervision/hiring and vicarious liability against Co-Defendant Sav-On and Mr. DeBinder's derivative claim of loss of consortium fail because Plaintiffs are unable to establish the necessary elements to prove her underlying claims.

### A.   Negligence

To prevail on a cause of action for negligence, a plaintiff must establish that the defendant owed a duty to that plaintiff, the defendant breached that duty, causation (the breach of duty is what actually and proximately caused the plaintiff's damages), and actual damages. See Vivian Arnold Realty Co. v. McCormick, 506 P.2d 1074, 1079 (1973); Berne v. Greyhound Parks of Arizona, Inc., 104 Ariz. 38, 448 P.2d 388 (1968). In the absence of any one of these elements, no cause of action for negligence will survive summary judgment. Id.

Plaintiff contends that Ms. Brown had a duty to ensure that patrons of Sav-On would not be harmed, including being wrongfully arrested. Thus, she had a duty to her as she is a patron of Sav-On. She argues that Ms. Brown breached this duty by (1) being suspicious of Ms. DeBinder under the circumstances, (2) withholding information from Ms. DeBinder, the police officer, and her supervisor, and (3) lying to Ms. DeBinder about having the prescription ready for pick up. Plaintiff contends that this conduct was the cause of her false arrest, and it short circuited her efforts to clear up any confusion.

The Court's first inquiry is whether Ms. Brown had "a duty to conform to a particular standard of conduct to protect [Ms. DeBinder] against unreasonable risks of harm." Alhambra School Dist. v. Maricopa County Superior Court, 796 P.2d 470, 473 (1990);

---

[8] As noted, Plaintiffs have conceded that summary judgment is appropriate for the claims of defamation and malicious prosecution. Therefore, the Court will not address these claims.

Markowitz v. Arizona Parks Bd., 706 P.2d 364, 368 (1985); Bellezzo v. State, 851 P.2d 847, 849 (App.1992). A claim for negligence may be maintained only if there is a duty, recognized by law, requiring the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. Markowitz v. Ariz. Parks Bd., 706 P.2d 364, 366 (1985); see also Gipson, 150 P.3d at 230 ("Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained."). The question of duty is generally decided by the trial court as a matter of law. Alhambra, 796 P.2d at 473.

Significant to the determination of whether a duty exists in this case is the relationship between Ms. Brown and Ms. DeBinder. Determining the existence of a duty in negligence cases ultimately boils down to the question of whether the defendant is under any obligation for the benefit of the specific plaintiff. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. Coburn v. City of Tucson, 691 P.2d 1078, 1080 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed. 1984)). In the case at bar, Ms. Brown is a licensed pharmacy technician and Ms. DeBinder is a patron of the pharmacy at which Ms. Brown is employed as a licensed pharmacy technician.

Defendants argue that because of this relationship and the fact that Plaintiff's claims are based on Ms. Brown's professional conduct, Ms. DeBinder was obligated to establish the standard of care, and deviation therefrom, by expert testimony. Defendants argue that the standard of care that is being called into question, that of the professional conduct of a licensed pharmacy technician in the state of Arizona, is not readily apparent to a layman, and therefore must, under Arizona law, be proven by expert testimony. Peacock v. Samaritan Health Service, 765 P.2d 525 (App. 1988). This is necessary so the jury is able to adequately measure the defendant's conduct against the applicable standard. Id.

The Defendant is correct that in cases in which the duty which the law recognizes arises because the defendant has held herself out to be trained in a particular trade or profession, the standard required is that the defendant exercise the skill and knowledge normally possessed by members of that trade or profession in good standing in similar communities. Kreisman v. Thomas, 469 P.2d 107, 112 (Ariz.App. 1970); Restatement (Second) of Torts s 299 A (1965); Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455 (1938); Stallcup v. Coscarart, 282 P.2d 791 (1955); Reliable Electric Co. v. Clinton Campbell Contractor, Inc., 459 P.2d 98 (1969). Moreover, the plaintiff has the burden of establishing what conduct this standard of care requires and that the defendant has failed to comply therewith. Kreisman, 469 P.2d at 112; Boyce, 77 P.2d 455; Stallcup, 282 P.2d at 791. Defendants are correct that the reason for this is to allow the jury to adequately measure the defendant's conduct against the applicable standard. However, such can be established through expert testimony or testimony by the Defendant herself.

In the case *sub judice*, Plaintiff has provided neither expert testimony nor testimony from the Defendant to establish the standard of care applicable to a licensed pharmacy technician or to demonstrate that Ms. Brown's conduct deviated from the applicable standard of care required for the protection of others against unreasonable risks.

Plaintiff contends that she is not obligated to provide expert testimony to establish the applicable standard of care for a licensed pharmacy technician. Ms. DeBinder, without any citation to authority, instead concludes that "this case involves a business that had a customer arrested on suspicion of a crime." She opines that for purposes of this case, the Defendants are no different from "a mall security guard who arrests someone for shoplifting." The Court disagrees. It is patently clear that a significant difference exists between the risks associated with filling a fraudulent prescription for narcotics versus a fictitious scenario set forth by Plaintiff wherein a mall security guard arrests someone for petty shoplifting. This case is

clearly distinguishable from the general example proffered by Plaintiff.[9]   Therefore, the Court disagrees with Plaintiff's argument.

It is evident from the record that Ms. Brown is licensed by the Arizona Board of Pharmacy (the Board), and consequently she is professionally obligated to conduct herself within the guidelines promulgated by the Board and in a manner that is reasonable for a licensed pharmacy technician in similar communities.[10] However, because there is no expert testimony or testimony of any kind to establish what those guidelines are and what such reasonable conduct is, Ms. DeBinder is unable to prove whether or not Ms. Brown's conduct deviated from the standard of care of a reasonable licensed pharmacy technician under the circumstances.[11] Moreover, Plaintiff has failed to establish that Ms. Brown did not exercise the skill and knowledge normally possessed by licensed pharmacy technicians in good standing in similar communities. Kreisman, 469 P.2d at 112. Accordingly, Plaintiff's cause of action for negligence against Ms. Brown cannot move forward, and summary judgment is **GRANTED**.

---

[9] The Court suspects that Plaintiff may have been referring to Officer Clevinger in its analogy to the security guard, however, he is not a party to this motion. Thus, the analogy is misplaced.

[10] All pharmacy technicians in the State of Arizona are licensed by the Arizona Stated Board of Pharmacy. A.R.S. §§ 32-1904. Furthermore, the Board can revoke or suspend the license, or put the licensee on probation when the licensee fails to comply with the guidelines set forth by the Board. A.R.S. §§ 32-1901-1996.

[11] Plaintiff spends ample time in her briefs explaining why the "red flags" should not be considered "red flags" to the licensed professionals at Sav-On, however, she does not produce any evidence to support her contention. Furthermore, without knowing the standard of care for a licensed pharmacy technician, and without any expert testimony, it is impossible to ascertain whether Ms. Brown's conduct in evaluating the "red flags" deviated from that of a reasonable licensed pharmacy technician under similar circumstances.

### B.     Negligent Infliction of Emotion Distress

"A negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger[12] so as to be subject to an unreasonable risk of bodily harm created by the defendant." Pierce v. Casas Adobes Baptist Church, 782 P.2d 1162, 1165 (1989); Villareal v. State Dept. Of Transp., 774 P.2d 213, 220 (1989). Although the law in Arizona requires a showing of bodily harm, a "long-term physical illness or mental disturbance" is sufficient to meet this requirement. Monaco v. HealthPartners of S. Ariz., 995 P.2d 735, 738-39 (App.1999); Quinn, 745 P.2d at 973 (The court held that a cause of action for negligent infliction of emotional distress also exists in a case where the plaintiff's shock or mental anguish developed solely from a threat to the plaintiff's personal security without witnessing an injury to another person. Physical impact to the plaintiff is not necessary, but the emotional distress must manifest itself in some physical way.).

Plaintiff has failed to establish that Defendant Brown was negligent. Defendant's negligence in creating an unreasonable risk to plaintiff is a required element of the cause of action for negligent infliction of emotional distress. Pierce, 782 P.2d at 1165. Therefore, summary judgment is **GRANTED** as to Plaintiff's cause of action for negligent infliction of emotional distress.

### C.     False Arrest

The tort of "false imprisonment" is synonymous with "false arrest". Deadman v. Valley Nat. Bank of Ariz., 743 P.2d 961, 965-66 (Ariz. Ct. App. 1987); see also Prosser & Keaton on Torts § 11 at 47, (5th ed. 1984). "The essence of false imprisonment is the direct restraint of personal liberty or freedom of locomotion, either by actual force or the fear of force." Deadman, 743 P.2d at 66; Wisniski v. Ong, 329 P.2d 1097 (Ariz. 1958). Furthermore,

---

[12] Zone of danger has been defined as "defendant's negligence must have created an unreasonable risk of bodily harm" to plaintiff. Quinn v. Turner, 745 P.2d 972, 974 (1987).

one who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment. <u>Deadman</u>, 743 P.2d at 966.

The Restatement (Second) of Torts 45A, Comment C states in part:

> Instigation. If the confinement is unprivileged, the one who instigates it is subject to liability to the person confined for the false imprisonment. Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of "officer, arrest that man!" It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.

Commend d states:

> One who instigates a false imprisonment becomes liable as if he had himself done the act causing the confinement. He is not protected by his reasonable belief that the officer or other person who makes the arrest has legal authority to make it, or that the arrest is fully justified.... Probable cause, which will prevent liability for malicious prosecution, ... is not a defense to an action for false imprisonment.

Comment e states in part:

> Participation. One who takes part in a false imprisonment, by aiding another to make it, becomes liable as if he had acted by himself.

See <u>Sarwark Motor Sales, Inc. v. Woolridge</u>, 354 P.2d 34 (Ariz. 1960); <u>Prosser & Keaton</u>, § 11 at 52.

Defendants contend that they are not liable for false arrest because Ms. Brown did not "instigate" the arrest. Plaintiff argues that Ms. Brown did instigate the arrest and therefore is liable for false arrest.

In support of their respective positions, both parties rely on <u>Deadman v. Valley National Bank of Arizona</u>. 743 P.2d at 961. In <u>Deadman</u>, the plaintiff required a cashier's check for $2,000 in order to purchase a truck. <u>Id</u>. at 963-64. Accordingly, the plaintiff visited defendant Valley National Bank to obtain the check.  The defendant erroneously concluded

that the plaintiff was attempting to commit fraud as a member of the gang currently operating in the Phoenix area using stolen or forged credit cards to obtain cash advances. Id. The police were notified by the bank, and the plaintiff was taken into custody. Id. The plaintiff later filed charges against the bank asserting a claim for false arrest. Id. at 965. The trial court denied the bank's motion for a directed verdict on the false arrest claim, and instead, *sua sponte*, directed a verdict in favor of the plaintiff on the issue of liability. Id.

Thereafter, the defendant appealed the trial court's decision arguing that the court should have directed a verdict in favor of the bank. The Arizona Court of Appeals concluded that the trial court's denial of the bank's motion for a directed verdict was proper. It reasoned that the record contained evidence upon which a jury *might reasonably find* that the bank's employees (1) engaged in conduct that directly resulted in the plaintiff's arrest, and, in doing so, they did not act reasonably under the circumstances, or (2) that they in fact participated in the arrest. Id. at 971. However, the court reversed the directed verdict in favor of the plaintiff and held that the claim for false arrest was a question of fact for the jury to determine. Id. According to the court, a jury might have found that the bank instigated or participated in the plaintiff's arrest, however, it remains that a reasonable juror could have found otherwise. Id.

The Deadman opinion specifically notes that "although strong public policy favors encouraging private citizens to report suspected criminal activity, the falsely and unreasonably accused individual ought not to be without a legal remedy." Id. at 970. The court further states, "that it is thoroughly settled law that a person is liable for a false arrest made by another if he 'directed, advised, countenanced, encouraged or instigated' such arrest. Id. at 967.

In the pending matter, the undisputed fact that Ms. Brown called the police is not as glaring an issue as the fact that she telephoned Plaintiff and deceived her into driving to the pharmacy, all the while knowing that the police would arrive shortly thereafter. Furthermore,

the fact that she had told police that she believed the prescription to be fraudulent and that Dr. Wagner wanted Plaintiff arrested for writing fraudulent prescriptions in his name weigh in favor of denying summary judgment, as such acts could be construed by a reasonable juror to have encouraging arrest. The phone call to the police have been part of the pharmacy technician's protocol, and without expert testimony, the Court cannot determine that issue. However, the phone call to Ms. DeBinder by Ms. Brown, for which Ms. Brown has not asserted that she was directed to make by any supervisor or had to make under Board guidelines, could be construed by a reasonable juror as instigating the arrest of Ms. DeBinder.

According to Deadman, "[a] defendant may be held liable as instigator of an arrest, even though there is no evidence that he expressly requested or demanded it, as long as the facts surrounding the arrest reasonably create a permissible inference of instigation." Id.; Crescent Amusement Co. v. Scott, 34 Ala.App. 335, 40 So.2d 882 (Ala.Ct.App.1949). In this case, the fact that Ms. Brown notified police of Dr. Wagner's request that Ms. DeBinder be arrested for procuring fraudulent prescriptions in his name, and that Ms. Brown called to entice her to come into the pharmacy for the purpose of being investigated and likely arrested by Bullhead City Police is undisputed. The Deadman Court is clear that a person is liable for a false arrest made by another if he instigated such arrest. 743 P.2d at 967. As such, genuine issues of material fact preclude this Court from entering judgment in Defendant Ms. Brown's favor on the claim of false arrest. As the Deadman court discussed, rather than conclude that Ms. Brown gave only conclusory or erroneous information, a jury might reasonably find that she advised, enticed, instigated, and/or encouraged the police to arrest Ms. DeBinder. Accordingly, summary judgment is **DENIED** as to Plaintiff's claim of false arrest.

### D. Punitive Damages

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313

U.S. 487, 496 (1941); Wickahoney v. Sewell, 273 F.2d 767, 768 (9th Cir. 1959). According to Arizona law, to obtain punitive damages, "a plaintiff must prove that 'defendant's evil hand was guided by an evil mind.'" Volz v. Coleman Co., 748 P.2d 1191, 1194 (Ariz. 1987) (citing Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz. 1986)). A plaintiff can establish the requisite evil mind by showing either that "defendant intended to injure the plaintiff" or that "defendant consciously pursued a course of conduct knowing that it created a substantial risk of harm to others." Id.; see also Ranburger v. S. Pac. Transp. Co., 760 P.2d 551, 553 (Ariz. 1988) (stating that an evil mind "may also be inferred when a [d]efendant acts to serve his own interests, consciously disregarding a substantial risk of significant harm to others"). Ms. DeBinder contends that Ms. Brown wantonly disregarded Ms. DeBinder's interests by lying to her for the purpose of having her arrested. Plaintiff states, "while everything else Brown did on that day can arguably be attributed to mere negligence, her deception cannot."

To overcome summary judgment, Plaintiffs must establish by clear and convincing evidence that Defendants possessed the requisite evil mind. Thompson v. Better-Bilt Aluminum Prods., Co., 832 P.2d 203, 209 (Ariz. 1992). The Supreme Court of Arizona has recognized that motions for summary judgment regarding claims for punitive damages are more complicated given plaintiffs' more onerous burden of proof. The Court explained that "a motion...for summary judgment must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence. Conversely, the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence." Id. at 210-11.

Here, without the benefit of having all of the evidence before it, the Court is unable to determine whether Ms. Brown's actions warrant a jury instruction on punitive damages. Accordingly, summary judgment is **DENIED without prejudice** as to punitive damages.

### E. Derivative Claims

The remaining claims, negligent supervision, vicarious liability, and loss of

- 16 -

consortium are all derivative claims. In order for derivative claims to exist, all elements of the underlying cause of action must be proven. Barnes v. Outlaw, 964 P.2d 484, 487.

### (1) Negligent Supervision[13]

Plaintiff argues that Sav-On is liable for the negligent supervision of Ms. Brown. Arizona looks to the Restatement (Second) of Agency (the Restatement) for the general rule concerning the tort of negligent supervision. Section 213 of the Restatement states:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
> (a) in giving improper or ambiguous orders of (sic) in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk to of harm to others: (sic)
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Specifically, Plaintiff looks to subsections (a) and (c) as support for her contention. Sav-On has defended its position on the basis of public policy and safety concerns. However, according to Ms. Brown's testimony, to the best of her knowledge, despite Sav-On's contention that fraudulent prescriptions are such a serious problem, its technicians are not provided with any training, guidelines, or procedures to follow when and if they are confronted with a prescription they suspect might be fraudulent. Whether or not Sav-On's conduct regarding providing regulations, supervision, and guidance to Ms. Brown as to the protocol for dealing with fraudulent prescriptions amounts to negligent supervision under subsection (a) or (c) of the Restatement is a question of fact for the jury to decide. Therefore, summary judgment is **DENIED** as to Plaintiff's claim of negligent supervision.

### (2) Vicarious Liability

Plaintiff contends that Sav-On is vicariously liable for all claims for which Ms. Brown

---

[13] Summary judgment was denied as to Plaintiff's claim for false arrest. Therefore, if she prevails on her false arrest claim, she can go forward with her negligent supervision claim. If not, the claim necessarily fails, as it is a derivative claim.

is liable. Ms. Brown was unequivocally within the course and scope of her employment at Sav-On during all times relevant to this action. Sav-On, in its Motion for Summary Judgment, concedes that if Ms. Brown is at fault, so too is Sav-On. However, as set forth above, Ms. DeBinder was unable to establish a claim against Ms. Brown with the exception of false arrest.[14] Because questions of material fact remain as to whether Ms. Brown enticed, encouraged, assisted in, or directed the arrest of Ms. DeBinder, Plaintiff's claim for vicarious liability against Sav-On strictly as to the claim of false arrest survives summary judgment. Her claim for vicarious liability as to the remaining claims, however, fail. Therefore, summary judgment is **DENIED** as to vicarious liability as it pertains to Ms. DeBinder's claim of false arrest.

### (3) Loss of Consortium

Mr. DeBinder, as Co-Plaintiff, filed a claim for loss of consortium. The principle behind a loss of consortium claim is that as a result of the plaintiff's underlying injury, whether mental or physical, the plaintiff's spouse has suffered a loss of "love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations." Howard Frank, M.D., P.C. v. Superior Court of State of Ariz., In and For Maricopa County, 722 P.2d 955, 956 n.1 (Ariz.,1986). Therefore, a loss of consortium claim is intended to compensate for the loss of the foregoing elements of a relationship. See Reben v. Ely, 705 P.2d 1360, 1362. Whether the degree of harm suffered by the plaintiff's spouse is sufficiently severe to give rise to a cause of action for loss of consortium is a matter of proof. Id.; Molien v. Kaiser Foundation Hospitals, 616 P.2d 813, 823 (Cal., 1980). In other words, whether the marital relationship has been sufficiently harmed to warrant damages is a matter for the jury to decide. Barnes, 964 P.2d at 487.

---

[14] The Court will not address Defendants' conclusion that there is a lack of evidence in the record to establish that Lasso, Choo, Olsen, and other employees of Sav-On were negligent, as this is a newly asserted theory by Plaintiff that has not been properly brought before the Court.

As previously stated, loss of consortium is a derivative claim. Therefore, the underlying claims must be proven before the loss of consortium claim can exist. <u>Barnes</u>, 964 P.2d at 487. Ms. DeBinder's claim for false arrest has survived summary judgment. Therefore, so too shall Mr. DeBinder's claim for loss of consortium- strictly as to Mrs. DeBinder's claim for false arrest. However, only if Ms. DeBinder prevails on her claim for false arrest against Ms. Brown will the jury determine whether the DeBinder's marital relationship has been sufficiently harmed to justify damages. Accordingly, summary judgment is **DENIED** as to Mr. DeBinder's claim for loss of consortium as it pertains to Plaintiff's false arrest claim.

## **MOTION FOR CLARIFICATION OF A COURT ORDER**

Pending before the Court is the Motion for Clarification of a Court Order (Doc. 115) filed by Tamara and Bryan DeBinder. The DeBinders seek clarification only as to a discrete portion of the defamation section of the Court's Order of March 26, 2008.

First and foremost, the Court will clarify that Defendants only conceded that the third statement made by Lubinski (Doc. 110, at 5:16-18) was defamatory for the purposes of the motion for summary judgment. In other words, whether the statement was in fact defamatory is a question of fact, to be resolved by the trier-of-fact at trial.

If the Jury finds that the statement was defamatory, as set forth in the Order, the jury must then consider privilege. In the Order, the Court stated clearly that it would not consider the existence of absolute privilege, as Defendants failed to provide the Court with authority to support the existence of such a privilege between two private individuals. Consequently, the Court moved to the next inquiry, whether qualified privilege exists. After careful consideration, the Court determined that a qualified privilege does exist because the information disseminated was done so in an effort to prevent the commission of a crime. Restatement (Second) of Torts § 598.

Thus, the next step in the sequence is to determine whether such a privilege was abused. After setting forth the current state of the law and analyzing the applicable facts, the Court unequivocally found that "the issue of whether the qualified privilege was abused must be determined by a jury." (Doc. 110, at 14:1-2.)

In summary, it is for the factfinder, in this case the jury, to determine whether the third statement is a defamatory statement. If the jury finds in the affirmative, then it must accept the Court's previous pretrial finding-that a qualified privilege exists. It is then tasked with determining whether the qualified privilege was abused.

Accordingly,

IT IS HEREBY ORDERED **GRANTING** Plaintiffs' Motion for Clarification of a Court Order (Doc. 115.) As it pertains to defamation, the order of summary judgment (Doc.110) should have been **DENIED** in part, solely as to Lubinski's third statement.

IT IS FURTHER ORDERED **GRANTING in part and DENYING in part** Defendants Brown and Sav-On's Motion for Summary Judgment. (Doc. 101.)

IT IS FURTHER ORDERED that summary judgment (Doc. 101) is **DENIED** as to the following claims: false arrest, punitive damages, loss of consortium, vicarious liability, and negligent supervision.

IT IS FURTHER ORDERED that summary judgment (Doc. 101) is **GRANTED** as to the following claims: negligence, negligent infliction of emotional distress, malicious prosecution, and defamation.

DATED this 7th day of January, 2009.

Paul G. Rosenblatt
United States District Judge

- 20 -